William D. Hyslop
United States Attorney
Eastern District of Washington
Joseph P. Derrig
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| PUBLIC UTILITY DISTRICT NO. 1 OF KLICKITAT COUNTY, a Washington public utility district, | |
| Defendant. | |

Plaintiff, United States of America, on behalf of the United States Department of the Interior and the United States Department of Agriculture, by and through William D. Hyslop, United States Attorney, for the Eastern District of Washington, and Joseph P. Derrig, Assistant United States Attorney for the Eastern District of Washington, alleges as follows:

**INTRODUCTION**

1. This is a civil action under federal and Washington State law for damages incurred by the United States in connection with the "Mile Marker 28 Fire," which Defendant's power line ignited on or about July 24, 2013, in Klickitat County.

2. The United States, acting on its own behalf and as trustee on behalf of the Yakama Nation, and at the request of the Bureau of Indian Affairs ("BIA") of the U.S. Department of the Interior, brings this action against Defendant for damages and suppression costs caused by the burning of approximately 19,732 acres within the exterior boundary of the Yakama Nation's reservation.

COMPLAINT - 1

3. The United States, at the request of the U.S. Department of Agriculture, also brings this action against Defendant for damages and suppression costs stemming from the Mile Marker 28 Fire.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345.

5. Venue is proper in the Eastern District of Washington pursuant to 28 U.S.C. § 1391(b), in that, the Defendant is a Washington State municipal corporation with its principle place of business in Washington State and all conduct relevant to the causes of action herein occurred within the Eastern District of Washington.

6. This action is timely pursuant to 28 U.S.C. § 2415(b).

7. The procedural hurdles contained in Wash. Rev. Code 4.96.020 do not apply to the federal government. *See West Virginia v. United States*, 479 U.S. 305, 311 (1987). Nonetheless, Plaintiff has filed a notice of claim with KPUD, as may be required under RCW 4.96.020, and waited more than 60 days before filing this Complaint.

## PARTIES

8. Plaintiff, United States of America, holds land in trust within the Yakama Indian Reservation for the benefit of the Yakama Nation which are under the supervision, control, administration, and protection of the Department of the Interior, Bureau of Indian Affairs (BIA). Plaintiff, United States of America, through the Department of the Interior and Department of Agriculture incurred damages and suppression costs stemming from the Mile Marker 28 Fire.

9. Defendant, Public Utility District No. 1 of Klickitat County ("KPUD"), is a public utility district formed under the laws of the State of Washington and doing business in Klickitat County, Washington. KPUD owned, operated, and maintained the overhead electrical distribution lines that are the subject of this action. KPUD is responsible for ensuring it has the legal authority to have its distribution lines on the Yakama Reservation.  KPUD is also responsible for controlling, operating, and

COMPLAINT - 2

maintaining the transmission lines described above, including but not limited to keeping vegetation cleared to a safe distance from the transmission lines.

## GENERAL ALLEGATIONS

10. On July 24, 2013, at approximately 11:00 am, the Mile Marker 28 Fire started on property on the Yakama Indian Reservation, northeast of Goldendale, in Klickitat County, Washington, in the vicinity of mile marker 28 on State Route 97 (hereinafter "Mile Maker 28 Fire" or "MM 28 Fire").

11. Contact between a KPUD electrical distribution line and the branches of a Grand Fir near Satus Pass in Klickitat County caused the Mile Marker 28 Fire to ignite and burn approximately 26,000 acres, of which 19,732 acres were within the exterior boundary of the Yakama Indian Reservation. The KPUD distribution line responsible for igniting the Mile Marker 28 Fire carried 7,200 volts.

12. Among the serious risks to person or property posed by KPUD's activities in operating overhead power lines in Klickitat County is the risk of igniting an uncontrolled wildland fire. This substantial risk was or should have been known by KPUD.

13. A primary cause of wildland fires initiated by utility lines is direct or indirect contact between a tree and a power line. This was or should have should have been known by KPUD.

14. KPUD knew or should have known its overhead electrical lines posed a substantial likelihood of igniting a wildland fire that would result in significant property damage, fire suppression costs, and potential bodily injury or loss of life, should KPUD fail to properly monitor and maintain the vegetation along its power lines to prevent tree/power line contact.

15. KPUD knew or should have known that failure to properly monitor its overhead power lines for danger trees and branches in close proximity to its lines, and failure to promptly remove such trees or its branches would significantly increase the likelihood that KPUD's electrical lines would cause a devastating wildfire.

COMPLAINT - 3

16. The branches of the tree responsible for causing the Mile Marker 28 Fire were in close proximity to the distribution lines and should have been removed by KPUD prior to them causing the fire.

17. KPUD's failure to identify, prune, or remove the hazard tree that caused the fire was inconsistent with nationally recognized standards from the American National Standard Institute for vegetation management, and the National Electrical Safety Code national standard for the operation of distribution lines. RCW 64.12.035(2) identifies a hazard to the general public health, safety, or welfare to exist when "[v]egetation has encroached upon electric facilities by overhanging or growing in such close proximity to overhead electric facilities that it constitutes an electrical hazard. . . ."

18. KPUD's vegetation management plan set forth in their Procedure Bulletin No. 51 states: "Any limb within ten feet of distribution electrical lines and twenty-three feet of transmission lines will be cut back." One of the purposes of Procedure Bulletin No. 51 is to keep tree limbs safely away from distribution lines to prevent fires.

19. KPUD knew or should have known the consequences of failing to follow Procedure Bulletin No. 51 could lead to a devastating wildfire. In a January 21, 2011, mailing, KPUD warned its customers that "Trees & Electricity Don't Mix." The mailing went on to state "[w]hen trees touch, or come close to touching an overhead electric wire several things can happen . . . . Or, a branch can merely brush against an energized wire and catch on fire."

20. KPUD's director of operations and generations at the time of the fire, Ron Ihrig, expected KPUD's tree trimming crew to comply with the Procedure Bulletin No. 51.

21. KPUD's operation manager at the time of the MM 28 fire, Jeff Thayer, personally explained to KPUD's tree trimming crew the expectation that any tree limb

COMPLAINT - 4

near a KPUD distribution line was required to be trimmed back to a distance of 10 feet.

22. Aerial photos of the fire scene taken only a few weeks before the MM 28 Fire shows the branches of trees growing into KPUD's electrical distribution line. Pursuant to KPUD's Procedure Bulletin No. 51 and the instructions, expectations, and directions of KPUD's management, those branches should have been trimmed back from KPUD's electrical distribution line in order to prevent a fire.

23. Washington State Department of Natural Resources conducted an investigation (DNR Investigation) of the Mile Marker 28 Fire the day after the fire started and produced a Wildland Fire Investigation Report (DNR Report).

24. DNR Wildland Fire Investigator, Dennis E. Heryford (Investigator Heryford), and a DNR Wildland Fire Investigator in Training, Shane Early (Investigator Early), went to the area where the fire started, examined the area, studied the physical evidence at the scene, interviewed a number of witnesses, and determined that the fire was caused by tree branches that contacted a KPUD power line.

25. There were no obvious signs of vegetation maintenance related to KPUD's distribution line at issue.

26. A subsequent review of the west boundary of KPUD's distribution line revealed several tree limbs that were within several inches of the westernmost conductor.

27. The DNR Report found the Mile Marker 28 Fire:

"...was caused by a line to ground fault that existed between a KCPUD pole with tag numbers on it (3923-8026.9 and 3923-7321.9) that is located south of the fire's specific origin and another KIPUD pole numbered 3923-9233.9 north of the fire's specific point or origin. This line to ground fault was created by the limbs of a standing live, green approximately 80 feet tall Grand Fir (tree 2) coming into contact with the KCPUD's westernmost distribution line. This interaction caused the effected limbs and needles on the limbs to ignite and burn within the tree. The burning debris fell to the ground, igniting the receptive fuels within

COMPLAINT - 5

the host beds fuel beds in the fire's origin area consisting of lichens, grasses, brush, and forest debris."

28. The trunk of the approximately 80-foot-tall grand fir's branches that contacted the power line, resulting in the Mile Marker 28 Fire, was less than ten feet from the distribution line.

29. On August 6, 2014, after reviewing the DNR Report, the BIA Yakama Agency Superintendent issued a trespass notice pursuant to the regulations at 25 C.F.R. 163.29 to KPUD for damages caused by the MM 28 Fire. KPUD did not respond to the notice of trespass.

30. On October 21, 2015, the BIA Yakama Agency Superintendent issued a demand notice to KPUD for $65,500,066.78 in damages caused to the Yakama Indian Reservation as a result of the MM 28 Fire. The demand letter provided appeal rights pursuant to 25 C.F.R. Part 2.

31. On November 23, 2015, KPUD filed a Notice of Appeal/Objection to Demand in response to the Superintendent's October 21, 2015 demand notice.

32. On November 25, 2015, KPUD filed a complaint in federal court, *Public Utility District No. 1 of Klickitat County v. U.S. Department of the Interior, et. al.,* No. 1:15-cv-3201-RMP (E.D. Wash. Nov. 25, 2015), alleging that the Secretary exceeded his authority under the National Indian Forest Resources Management Act (NIRFMA) 25 U.S.C. § 3106, in enacting the trespass regulations at 25 C.F.R. 163 and that the federal government's actions in sending the demand letter to KPUD were *ultra vires*. KPUD also requested a permanent injunction against the Department of the Interior from enforcing the regulations at 25 C.F.R. Part 163 against KPUD.

33. On January 7, 2016, the BIA Northwest Regional Director sent a letter to KPUD providing 45 days to submit additional evidence or support for

COMPLAINT - 6

their administrative appeal challenging the Superintendent's October 21, 2015, demand notice.

34.     On February 1, 2016, the BIA and KPUD agreed to stay the administrative proceedings.

35.     On November 23, 2016, the court granted the United States' Motion to Dismiss finding that the action being challenged "is not a final agency determination under 5 U.S.C. § 704" and as such, the court did not have jurisdiction to hear the appeal. *Public Utility District No. 1 of Klickitat County v. U.S. Department of the Interior, et. al.*, 2016 WL 10654671, at *3 (E.D. Wash. Nov. 23, 2016).

36.     On January 21, 2017, KPUD filed a notice of appeal to the Ninth Circuit of the district court's Order granting the United States motion to dismiss. KPUD eventually voluntarily withdrew its appeal to the Ninth Circuit.

37.     On May 31, 2017, the BIA Northwest Regional Director sent a letter to KPUD explaining that he was lifting the stay of the administrative case and the Department was moving forward with the administrative appeal. Since the November 23, 2015, Notice of Appeal/Objection to Demand stated that KPUD reserved the right to submit a statement of reasons pursuant to 25 C.F.R. § 2.10, the Regional Director requested that KPUD submit a statement of reasons and any pertinent information in support of its appeal to BIA within 30 calendar days. BIA approved KPUD's request for an extension of time to submit its Statement of Reasons. KPUD submitted a Statement of Reasons dated August 18, 2017. On February 22, 2019, BIA sent KPUD additional documents for review and comment. On March 27, 2019, KPUD submitted a Supplement to its Statement of Reasons.

38.     On June 19, 2019, after a review of the record in the administrative appeal of the Superintendent's October 21, 2015, demand letter and additional materials submitted by KPUD, the BIA's Northwest Regional Director issued a decision on the appeal. The Regional Director upheld the Superintendent's

COMPLAINT - 7

decision that KPUD committed a trespass by starting the MM 28 Fire and was liable in damages to the Yakama Nation for losses sustained in the fire. The Regional Director amended the amount of damages owed by reducing the interest rate of eight percent to one percent. The Regional Director also removed charges for investigative costs from the demand. These reductions in damages result in total demand of $58,367,616.45.

39. The Regional Director's decision is appealable to the Interior Board of Indian Appeals (IBIA) pursuant to the regulations at 43 C.F.R. 4.310-4.340. KPUD must file a notice of appeal to the Board of Indian Appeals within 30 days from the date of receipt of the decision. KPUD appealed the Regional Director's decision to the IBIA on July 18, 2019.

40. 25 U.S.C. §§ 323-328, 25 C.F.R. Part 169, govern grants of rights-of-way over Indian lands. Grants of rights-of-way over Yakama Nation land require approval of the Secretary of the Interior, and the Yakama Nation. In 1954, the BIA Acting Superintendent approved a right-of-way to P.U.D No. 1 of Klickitat County for the construction and maintenance of a power line over Indian lands identified on a Right of Way Map dated February 3, 1954. The right-of-way was valid for 50 years and expired on February 2, 2004.

41. On January 22, 2007, the BIA Yakama Agency Superintendent sent a letter to KPUD noting that KPUD's easements had expired. On May 25, 2007, the BIA Yakama Agency Superintendent again wrote to KPUD stating that the Agency had not received applications for the expired easements identified in the earlier correspondence.

42. On March 7, 2008, KPUD wrote to the BIA Yakama Agency stating that they intended to apply for renewal of the easements but took no further action to renew the easements. KPUD decided to continue to operate its transmission lines on the Yakama Reservation with clear knowledge that it had no authority to do so.

COMPLAINT - 8

43. KPUD does not have a current right-of-way for its power lines on the Yakama Reservation and did not have a current right-of-way for its power lines at the time KPUD's lines caused the MM 28 Fire. KPUD continues to trespass and has been trespassing on Yakama Nation lands since February 2, 2004.

## FIRST CLAIM FOR RELIEF
### (Negligence)

44. The United States re-alleges and incorporates its previous allegations as though fully set forth herein.

45. KPUD owed the duty to exercise the "highest care that human prudence is equal to" in maintaining this distribution line free from trees and their branches. *See Brashear v. Puget Power & Light*, 100 Wn.2d 204, 211, 667 P.2d 78 (1983).

46. KPUD, through its own actions or inactions, or those of its agents or employees, failed to exercise due care and was negligent in the following particulars:

    i. KPUD failed to exercise the standard of care required of an electric utility in maintaining its utility corridor in that it failed to adequately trim the branches or remove the tree that caused the MM 28 Fire. Such standard of care was required by KPUD's own policy and implementing procedure, accepted industry standards, the requirements of the American National Standards Institute's utility vegetation management standards, National Electric Safety Code standards, and other State standards.

    ii. KPUD had a duty of care to maintain its power lines free from branches, such as the ones that caused this fire. The sequence of events leading to the start of the MM 28 Fire was the result of a failure on the part of KPUD to remove the branches or trees that posed an obvious and inevitable hazard to its power lines.

    iii. KPUD negligently failed to fulfill its duties and failed to satisfy the level of care requisite to the operation, maintenance, and vegetation management of

COMPLAINT - 9

high-voltage overhead electrical lines in wildland-fire-prone service areas; KPUD's failures were responsible for the start and spread of the MM 28 Fire.

47.  The wrongful and negligent acts and omissions of KPUD were the direct and proximate cause of Plaintiff's loss of significant timber revenues that are a critical part of the Nation's economy, damages to the Nation's natural resources and Plaintiff's expenditures to suppress the MM 28 Fire and subsequent land rehabilitation.

## SECOND CLAIM FOR RELIEF
### (Fire Suppression Cost Recovery Under RCW 76.04.495)

48.  The United States re-alleges and incorporates its previous allegations as though fully set forth herein.

49.  RCW 76.04.495 allows the United States to recover reasonable expenses in fighting the fire, together with costs of investigation and litigation including reasonable attorneys' fees and taxable court costs from any corporation whose negligence is responsible for starting a fire which spreads to forestland such as that at issue here.

50.  As a direct and proximate result of KPUD's above-described negligence, the MM 28 Fire ignited, and the United States through Departments and firefighting agencies thereof, was obligated to fight and suppress the fire. As a result, the United States incurred necessary and reasonable fire suppression costs and expenses, and now will also incur litigation expenses.

## THIRD CLAIM FOR RELIEF
### (Forest Trespass,  25 U.S.C. §§ 3103-3106, 25 C.F.R. § 163.29 )

51.  The United States re-alleges and incorporates its previous allegations as though fully set forth herein.

52.  The Department of the Interior, through the Bureau of Indian Affairs, has assessed the civil penalties under NIFRMA administratively, which have been

COMPLAINT - 10

appealed administratively by KPUD. That administrative appeal process is still on going.

53. Congress did not intend NIFRMA to pre-empt or supplant state law tort claims or remedies. NIFRMA does not allow recovery for suppression costs which are sought here.

54. Accordingly, the United States brings this claim protectively and upon exhaustion of the administrative process, the United States may amend this complaint.

## FOURTH CLAIM FOR RELIEF

### Trespass

55. The United States re-alleges and incorporates its previous allegations as though fully set forth herein.

56. KPUD is required to have a valid right-of-way for its transmission and power lines located on the Yakama Indian Reservation. KPUD does not have a valid right-of-way and has not had a valid right-of-way since 2004.

57. KPUD has not obtained a valid right-of-way and decided to continue to operate its electrical distribution lines in a manner that made it reasonably foreseeable that KPUD's decisions would disturb the Yakama Nation's possessory interest in land held in trust by the Plaintiff for the benefit of the Yakama Nation.

58. KPUD's trespass caused actual and substantial damage.

59. KPUD continues to operate its electrical distribution lines located on the Yakama Indian Reservation without a valid right-of-way.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1. All costs, to be determined at trial, associated with the suppression of the Mile Marker 28 Fire and rehabilitation of lands, whether expended or to be expended in the future.

COMPLAINT - 11

2. Damages, to be determined at trial, related to the wrongful and negligent acts of KPUD, including but not limited to lost timber revenue and damages to the Nation's natural resources.

3. All present and future administrative costs, to be determined at trial, associated with the Mile Marker 28 Fire.

4. Payment of costs associated with damage to Indian forest land includes, but is not limited to, rehabilitation, reforestation, lost future revenue and lost profits, loss of productivity, and damage to other forest resources.

5. Payment of costs and damages caused by the trespass of KPUD's transmission and power lines on Indian lands.

6. Interest as prescribed and allowable by law, including under 31 U.S.C. § 3717.

7. All costs, expenses, reasonable attorney's fees and any other relief the Court deems just and equitable.

Dated: July 23, 2019.

WILLIAM D. HYSLOP
United States Attorney

s/William D. Hyslop
William D. Hyslop
United States Attorney


s/Joseph P. Derrig
Joseph P. Derrig
Assistant United States Attorney


Attorneys for Plaintiff

COMPLAINT - 12

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
 **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
 **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.